Forrest L. Miller, appellee, v. Floyd H. Miller, appellant.

No. 49385.

(Reported in 89 N.W.2d 871)

May 6, 1958.

Camp & Harsh, of Creston, and Frank F. Wilson, of Mount Ayr, for appellant.

Arnold O. Kenyon, of Creston, and Killmar & Reynoldson, of Osceola, for appellee.

Oliver, J.—This is a suit by Forrest L. Miller against his father, Floyd H. Miller, for the establishment, dissolution and an accounting of the affairs of an alleged partnership in a Buick automobile agency in Creston, Iowa, which plaintiff pleaded

was formed by oral agreement of the two persons, in 1930, and conducted business until April 1, 1954. Defendant denied any such partnership ever existed. The trial court found and adjudged the existence of such partnership had been proved and, upon accounting, rendered judgment for plaintiff for $52,158.25. Defendant has appealed.

In 1921 defendant secured the Buick automobile agency in Creston. His business was conducted under the name of Creston Buick Sales Company. In 1925 this was registered by him as a trade name, as required by statute, now chapter 547, Code of Iowa, 1958. No change in this registration was thereafter made.

Plaintiff contends he formed the partnership with defendant in 1930, when he was seventeen years old. He testified defendant told him he was young and would not need very much money "and that I would be his partner and then when things got better, business got better, why, then we could straighten up as I got older." He testified his drawing was supposed to be $5 per week but he was paid only part of it and that about 1932 he borrowed and earned by outside employment several hundred dollars which went into the business. This $5 per week arrangement continued until 1936 when plaintiff "was getting married and it was understood that I was to get $100 a month draw, from that time on. * * *

"In 1941 there was a divorce petition filed [against plaintiff] in Arkansas and my father financed that effort. I don't know how much he gave me because as soon as I got back I sold four new Buicks and I knew that would more than pay for that. I was paid spasmodically $100 a month from 1936 to 1946. * * * I enlisted in the armed forces in 1942 and was in the service 14 months. * * * my father told me that he would hold the thing together * * * so we would get started after the war." Plaintiff returned to Creston in September 1943. He testified there was then no automobile business so he drove a taxicab for about eighteen months. Later he performed labor for the contractor who was constructing a garage building for defendant. This building was completed in October 1945, and plaintiff "started selling cars as quick as we got them."

He testified he talked to defendant about going to an attorney and having the partnership "all fixed up * * * so everybody

would really know where they stood" and defendant from time to time deferred doing this and told him he wanted to build up some money and would then turn defendant's half of the business over to plaintiff's half brother, Jack, and "I would have my half. * * * In 1946 cars were coming through a little better and I was supposed to get $200 a unit—and that worked out all right if I didn't get over two, but if it got to where I was making four or five, why, then I was told we had better keep the rest of it in the business. That was four or five units and I drew around $400 a month. * * * I turned the money into the drawer and no arrangement was made for a bonus then. I claim half of the money should be mine. * * *

"In 1946 there was a time when General Motors was on strike and rather than draw money out of the business I joined the 52-20 Club [$20 per week for 52 weeks for unemployed veterans] by telling them simply I was a car man and General Motors was on strike." (Plaintiff was divorced and remarried in 1946.) "In 1948 Clarence Hausz set up a bookkeeping system, and I was supposed to have $5000 a year plus. My salary for 1949 was $6250. In 1950 I took a drop down to around $4000."

Plaintiff's half brother, Jack Miller, worked at Creston Buick Sales Company most of the time from 1938, except from 1942 to 1945. Plaintiff testified that from 1946 to 1954 defendant spent little time at the garage. "In 1954 the condition between I and my father and half brother [Jack] got so unbearable that I walked out. * * * it was but a few weeks until things got a little better and I talked to my father and he was talking about buying me another dealership or something." (For three months in 1954 plaintiff remained away from Creston Buick Sales Company.) Then "* * * Clarence Hausz got hold of me and wanted to see if Jack and I would take the business over." This was done.

Plaintiff and Jack entered into a written partnership agreement to operate the business under the name of Miller Buick Company. July 23, 1954, plaintiff and Jack Miller each gave defendant a note for $5000 in payment for the garage equipment, etc., and a bill of sale therefor was made by defendant to plaintiff and Jack. At the same time a lease of the garage building from defendant to plaintiff and Jack was executed by

the parties. Miller Buick Company secured a franchise from Buick Motor Division. September 4, 1954, the trade name of the partnership, Miller Buick Company, was registered. The operating capital for Miller Buick Company was secured by a bank loan of $4000. The note for the loan was signed by plaintiff and Jack and by defendant. Each of the two partners drew $400 per month from Miller Buick Company. The partnership soon encountered financial difficulties. It ceased operations about April 1, 1955. Shortly thereafter plaintiff instituted this suit against his father. Eventually defendant paid the $4000 note for the money loaned plaintiff and Jack.

Plaintiff's wife testified defendant offered her $5000 for plaintiff's half of the parts and equipment. Another witness testified defendant told him Creston Buick Sales Company was a partnership. A used-car dealer from Colorado testified he was introduced to plaintiff as a partner and co-owner of the automobile business and dealt with him as such and that defendant said the cars were in the partnership.

Defendant denied he entered into a partnership with plaintiff in 1930. He testified plaintiff was then seventeen years old and "was just loafing around, in and out of the place and playing." According to defendant, plaintiff started selling automobiles several years later. Defendant paid him $100 per month. He lived with defendant until he was married to his first wife and one and one-half or two years after his return from service. For several years the Buick Division made no automobiles for general sale and defendant was out of the automobile business until about 1946. Near the end of that time defendant had the new garage constructed. Plaintiff worked for the contractor. About 1947 plaintiff again went to work for defendant at $150 per month and later at $250 per month. Plaintiff and Jack were both working for defendant at the same salary. Plaintiff did not claim he had any interest in the business as a partner.

Clarence Hausz testified he set up the books of Creston Buick Sales Company for defendant, about 1948. There was nothing in the books to indicate a partnership. The witness assisted plaintiff in persuading Jack to enter into partnership with him and had several conferences with plaintiff concerning

the proposed partnership. He testified that in none of these did plaintiff make any claim he already had an interest in the business.

Jack Miller testified plaintiff and he were working for their father and were drawing approximately the same salary, and the same profit-sharing bonus at the end of each year. Jack was in the office management end of the business. Plaintiff was in the sales end. Withholding and social security were deducted from the pay of each of them. Jack testified that by 1953 he felt he was carrying most of the load there and getting the same money as plaintiff and he was not satisfied and he left and went to Denver. After his return, early in 1954, plaintiff and he began negotiations which resulted in the formation of their partnership, under which they operated the business from about August 1954 to April 1955.

The bookkeeper for Creston Buick Sales Company, in 1953 and 1954, testified plaintiff was paid on a monthly basis, and that withholding tax and social security tax were deducted from his salary. Clarke Bailey, territory manager for an automobile finance company, testified Floyd Miller had always signed all contracts or mortgages for Creston Buick Sales Company. This became inconvenient and the witness prepared the following instrument, which was signed by defendant, plaintiff and Jack.

"To: O'Dea Finance Company June 4, 1947.

"I hereby authorize Forrest L. Miller or Jack Q. Miller to sign conditional sales contracts, bill of sale and trust receipts, and any other forms in connection with our financing program with your company.

"A specimen of each of the above men's signature appears below. You may accept either of their signatures which will be binding on the Creston Buick Sales.

CRESTON BUICK SALES<br>
By Floyd H. Miller<br>
Owner (Floyd Miller)

Forrest L. Miller
Jack Q. Miller."

Copies of the federal income tax returns of plaintiff for 1947 to 1953 inclusive (except for 1951), to which were attached the withholding statements furnished plaintiff by Creston Buick Sales Company, based upon the compensation paid him, were placed in evidence. No partnership return for Creston Buick Sales Company was ever made by plaintiff or defendant. Income from the operations of Creston Buick Sales Company for the years 1945 to 1955 inclusive was shown in copies of the returns of defendant, as part of his individual income. The assessment rolls show the personal property of Creston Buick Sales Company was assessed to defendant. The real estate occupied by the business stood in his name. Certain exhibits show suits by and against Creston Buick Sales Company were maintained in the name of Floyd H. Miller, owner, and against him as an individual. Plaintiff was never a party to any such suit. Selling agreements between GMC Truck and Coach Division and Creston Buick Sales Company, shown of record, were signed by defendant as an individual.

 The briefs of the parties present various legal propositions which we find it unnecessary to consider. It is well settled that proof required to establish a partnership as between alleged partners must be clear, satisfactory and convincing. Butler v. Lloyd, 230 Iowa 422, 426, 297 N.W. 871; Danico v. Ford, 230 Iowa 1237, 1242, 300 N.W. 547; Myers v. Blinks, 232 Iowa 1238, 1243, 7 N.W.2d 819; 68 C. J. S., Partnership, section 57. In this case the record falls far short of furnishing such proof. The testimony is sharply conflicting, but the conduct of the parties, disclosed largely by the writings and other exhibits in evidence, strongly negatives plaintiff's contentions. In that connection it may be observed that courts have frequently given weight to income tax returns and the registration of trade names as tending to show the true situation. See Nelson v. Barnick, 245 Iowa 982, 987, 63 N.W.2d 911; Danico v. Ford, 230 Iowa 1237, 1240, 1241, 300 N.W. 547; 68 C. J. S., Partnership, section 57.

██ We hold the record is insufficient to establish the existence of a partnership between plaintiff and defendant. We hold also that plaintiff's $5000 note made to defendant is valid and that the part of the judgment canceling it is erroneous.

The judgment is reversed and the cause is remanded for judgment in accordance herewith.—Reversed and remanded.

All JUSTICES concur except SMITH, J., not sitting.