SRI CORP., Plaintiff-Appellee, *v.* FIRST NATIONAL BANK OF ROCK ISLAND, Trustee, Defendant-Appellee.—(JUDSON E. MILLS, Defendant-Appellant.)

Third District   No. 78-408

Opinion filed August 17, 1979.

Stewart R. Winstein and Dorothea O'Dean, both of Rock Island, for appellant.

Herbert M. Spector, of Spector, Tappa, Kopp and Nathan, of Rock Island, for appellee SRI Corp.

Robert Eagle, of Eagle and Eagle, of Rock Island, for appellee First National Bank of Rock Island.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, SRI Corp., filed a complaint against First National Bank of Rock Island and Judson Mills seeking a declaration of rights respecting a land-trust agreement and a joint-venture agreement. The complaint requested the court to determine that under such agreements an addendum to a lease had been properly approved under the terms of the agreements. A counterclaim filed by Judson Mills requested a determination that the addendum had not been properly approved and requested that the parties be prevented from executing the addendum.

The facts are substantially undisputed.

On April 1, 1961, a partnership was formed by the name of River Realty. The purpose of the partnership was to purchase and develop a parcel of land in downtown Rock Island, Illinois. The partnership was formed by the execution of a written partnership agreement.

The real estate was acquired and on March 2, 1964, River Realty, a partnership, entered into a lease with William R. Smith wherein the latter agreed to rent a large hotel to be erected on the property. The rent was to be based upon a percentage of gross room rentals and sales, with a monthly minimum.

In June 1964, River Realty, in order to raise additional capital, entered into a joint-venture agreement with 26 other individuals, trusts and corporations. River Realty contributed the land to the joint venture

and the other venturers contributed the capital necessary for the construction of the hotel. Pursuant to the agreement, River Realty owned 50 percent of the joint venture and the remaining 50 percent was owned in varying amounts by the aforementioned individuals, trusts and corporations.

The joint-venture agreement included two provisions that dealt specifically with a proposed lease of the property and the management and control of the property:

"6. *Leases* * * * Said lease shall be in such form and substance, as shall be approved in writing by the holders of a majority of the beneficial interest in said land trust.

* * *

8. *Majority Control.* The holders of the majority of the beneficial interest in said Land Trust, or any agent or agents designated in writing by them, shall have the management of said property and the control of the selling, renting and handling thereof, and the Land Trustee shall be authorized to act in respect thereto and in all respects upon the written direction of the holders of the majority of the beneficial interest in said Land Trust."

On June 27, 1964, a land trust was established pursuant to the terms of the joint venture agreement. The hotel property was placed in trust with the First National Bank of Rock Island acting as trustee. The trust agreement provided:

"* * * First National Bank of Rock Island will deal with said real estate only when authorized to do so in writing and that (notwithstanding any change in the beneficiary or beneficiaries hereunder) it will on the written direction of the beneficiaries holding a majority of the beneficial interest in the trust, or will on the written direction of such other person or persons as shall be from time to time named by the beneficiaries holding a majority interest in the trust, make deeds for or otherwise deal with the title to said real estate * * *."

Pursuant to the trust agreement and the establishment of the land trust, the subject property was deeded in trust to the First National Bank of Rock Island. The deed gave the trustee full power and authority to leave the property, renew or extend leases, or to change or modify leases and the terms and provisions thereof.

A Sheraton Motor Inn was subsequently constructed on the property and leased to William R. Smith pursuant to the original lease.

In 1967 Smith transferred all his interest in the Sheraton of Rock Island, including his rights with respect to the lease to SRI Corp., the present tenant in the property and the plaintiff in this case.

On April 6, 1967, the defendant, Judson Mills, entered into an

agreement with one of the original partners of River Realty to purchase his partnership interest. After Judson Mills purchased his interest in River Realty, he signed several documents as a partner in River Realty and in preparing his annual income tax returns would take a deduction based on an income loss incurred by the partnership, River Realty.

Since 1967, SRI Corp. has operated the hotel. It ran into financial difficulty and proposed an amendment to the original lease which would provide for an elimination of the monthly minimum rentals and the percentage rentals for a four-year period of time.

Written directions to the trustee, First National Bank of Rock Island, to amend the lease as proposed were signed by all the joint venturers, including all the partners of River Realty except the defendant, Judson Mills. Defendant Mills owned 10 percent of River Realty.

Because of Mills' refusal to join in the directions to the trustee, the trustee, on advice of counsel, took no action awaiting a legal determination of the matter. The present action was then filed to determine whether or not the trustee, First National Bank of Rock Island, should follow the written directions to amend the lease.

The court held that the partnership known as River Realty could and did act with respect to its 50-percent beneficial interest in the joint venture by the agreement of a majority of the members of the partnership. The court also concluded that only a majority of the owners of the beneficial interest in the joint venture need concur in the directions to the trustee. Finally, the court concluded the directions to the trustee properly authorized the addendum to the lease and directed that it should be executed by the trustee.

The principal assertion of error by the defendant Mills made on this appeal is his claim that River Realty, a partnership, could only approve and participate in the directions of the parties to the joint venture by the unanimous agreement of the partners of River Realty.

As we have noted above, River Realty was initially established pursuant to a written agreement of the then partners. Mills acquired his interest from one of the partners, and it also appears that other partners also sold and assigned their interests in the partnership at various times subsequent to the initial agreement. Since Mills did not sign the partnership agreement, it is his contention that the partnership existed by virtue of oral agreements between the partners, thus making certain provision of the Uniform Partnership Act applicable (Ill. Rev. Stat. 1977, ch. 106½, pars. 1 through 43).

Defendant Mills calls our attention to several provisions of the Uniform Partnership Act which he asserts require the unanimous action of all of the partners in dealing with the beneficial interest in the joint venture.

Section 29 of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 29) provides:

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Section 41 of said Act (Ill. Rev. Stat. 1977, ch. 106½, par. 41) provides:

"(1) When any new partner is admitted into an existing partnership, or when any partner retires and assigns * * * his rights in partnership property to two or more of the partners, or to one or more of the partners and one or more third persons, if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business."

Section 18 of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 18) provides:

"Rights and duties of partners inter se.

* * *

(h) Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

■■ We fail to see how these provisions of the Uniform Partnership Act support Mills' contention that unanimous action of the partners is required. The statute recognizes both that partnerships may continue even though the members may have changed and also recognizes that the will of the majority of the partners may constitute partnership action unless contrary to some provision of the agreement requiring otherwise. This view finds specific support in other provisions of the Uniform Partnership Act.

Section 27(1) of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 27(1)) provides:

"A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership to interfere in the managment or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."

Section 23(2) of the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 23(2)) provides:

"A continuation of the business by the partners or such of them as habitually acted therein during the term, without any settlement or liquidation of the partnership affairs, is prima facie evidence of a continuation of the partnership."

■■ Mills acquired his interest in the partnership sometime after the partnership originated. In the purchase agreement which Mills signed he agreed to hold the partner who was selling his interest harmless "from any and all liabilities which may rise hereafter in the continuation of the operation of the partnership." This language clearly contemplates a continuation of the partnership.

■■ As to the partnership agreement, paragraph 10 provides that if a partner desires to sell his interest, he should give the other partners the first option to purchase. Paragraph 11 provides for mandatory purchase by the remaining partners in the event of the death of one of the partners and paragraph 13 provides that the partnership agreement is to be binding on the heirs, devisees, legatees and personal representatives of the parties. Paragraph 3 of the agreement specifically provides "All partnership action shall be by majority vote, providing, however, that said partnership shall not be dissolved except by a three-fourths vote, * * *." Thus, the partnership agreement contemplates that the membership of the partnership might change, but change in membership should not work a dissolution of the partnership.

After Mills acquired his interest in the partnership, he assented to the conditions of the partnership agreement by his conduct and his rights and obligations are governed by the terms of the partnership agreement. As between parties the question of the existence of a partnership relation is one of intention to be gathered from all the facts and circumstances. *Kurtz v. Kurtz* (1956), 10 Ill. App. 2d 310, 134 N.E.2d 609.

According to 59 Am. Jur. 2d *Partnership* §33, at 956 (1971):

"The duties and obligations of partners arising from a partnership relation are regulated by the express contract as far as they are covered thereby. While a written agreement is not necessary, where it does exist it constitutes the measure of the partners' rights and obligations. The written agreement, or 'partnership articles' as it is usually called, may include practically any provision desired. And while the rights and duties of the partners in relation to the partnership are governed by the Uniformed Partnership Act, the Uniform Act also provides that such rules are subject to any agreement between the parties."

■■ We believe the provision authorizing partnership action by a vote of the majority is unambiguous and clearly expressive of the intent of the agreement. It is consistent with all of the other provisions of the partnership agreement.

Even if the language of the partnership agreement authorizes partnership action by a vote of the majority, Mills nevertheless argues that when the partnership agreement, the joint-venture agreement, and the agency agreement authorizing the bank to act in behalf of the joint venture are considered together with the conduct of the parties, the concurrence of all of those interested in the joint venture, whether as members of the River Realty partnership or otherwise, is required. In particular, he points to the fact that the joint-venture agreement and the agency agreement were signed by each of the then members of the River Realty partnership as well as each of the owners of the remaining 50 percent beneficial interest in the joint venture and land trust.

■■ It does not follow in our opinion that the fact that all of the members of River Realty signed the agreements constituted adoption of a provision contrary to the express language of the partnership agreement. There is no particular significance to all parties joining in an undertaking when the action might have been taken by some other number of participants, since it may be inferred that such was done merely to indicate the general agreement of all of the parties to the basic understanding and agreement.

Mills suggests that there being 10 members of the River Realty partnership, six members of the partnership plus the concurrence of one of the other owners of the beneficial interest in the joint venture could control the conduct of the joint venture. He suggests that this power in a minority is somehow unfair or against public policy. We are unaware of any support for this position and in terms of power of a minority, the view proposed by Mills would even be more unfair. If unanimous action were required, then one owner of say one percent or less of the beneficial interest in the joint venture could exercise a veto power over the wishes of the other 99 percent interest in the venture.

At the time this project was commenced, the relationship between the parties was so established that approval of a majority of the partners of River Realty would be required for any action to be taken by or in behalf of the joint venture. We find nothing improper or illegal in this plan. All of the documents, *i.e.*, partnership agreement, joint-venture agreement and land-trust agreement, contemplate action by majorities in the conduct of the enterprise.

For the foregoing reasons the judgment of the circuit court of Rock Island County is affirmed.

Judgment affirmed.

SCOTT and BARRY, JJ., concur.