**Robert R. MEDD, Appellant,**

v.

**C. R. MEDD; Richard L. Medd; Ralph C. Medd; Davenport Dairy Queen, a co-partnership; R & I Dairy Queen Stores, a co-partnership; Medd-O-Lane Dairy Products, Inc.; and First National Bank of Moline, Appellees.**

No. 63490.

Supreme Court of Iowa.

April 23, 1980.

Rehearing Denied May 16, 1980.

Walter Newport of Newport, Fortini & Hohenadel, Davenport, for appellant.

Richard M. Batcher and Hubbard Neighbour of Bozeman, Neighbour, Patton & Noe, Moline, Ill., for appellees.

REES, Justice.

The plaintiff, Robert R. Medd, appeals from the dismissal of his petition in equity seeking dissolution of two family partnerships and the distribution of his pro rata share in the assets of those partnerships. The trial court concluded that plaintiff's share of the assets upon withdrawal had been established by a general agreement of the partners and that partition of assets of the partnerships or distribution of the cash equivalent thereof was not legally justified. We affirm.

The plaintiff filed his petition on April 28, 1977, contending that the family partnerships owned by him and the defendants (his father C. R. Medd, and his brothers Richard, Ralph and Ronald Medd) had been dissolved when he gave defendants notice to that effect as required by both Iowa and Illinois law. Application of the law of both states was necessitated by the fact that one of the partnerships, Davenport Dairy Queen, is an Iowa partnership, while R & I Dairy Queen Stores is an Illinois partnership. Robert consequently sought to have the court partition the assets of the partnerships or to award him the fair market value of his interest in the partnerships.

In their answer the defendants denied the material allegations of plaintiff's petition, and stated that they had offered to Robert the value of his capital accounts in the partnerships, the amount which they

claim is established by agreement of the parties as the distributive share for a withdrawing partner.

At trial it became clear that the bone of contention between the parties is the effect to be given to the withdrawal provision contained in a 1947 "co-adventure agreement" entered into by the parties.[1] This instrument, facially applicable only to a Dairy Queen venture in Ohio, clearly states that a withdrawing partner would receive only the value of his or her capital account. A supplemental agreement was executed later in 1947 regarding Dairy Queen operations in Scott County, Iowa, which anticipated an additional agreement which would provide further elaboration on the rights and obligations of those involved. No subsequent documents were executed regarding either of the partnerships at issue.

Robert contends that the withdrawal provision has no application to the Davenport Dairy Queen and R & I Dairy Queen Stores partnerships and that he is therefore entitled to his pro rata share of the partnership assets upon his withdrawal. The defendants, while acknowledging the facial inapplicability of the withdrawal provision of the 1947 agreement, allege that the parties, by their mutual agreement and conduct, have made the termination of interest provision applicable to the partnerships in question. They point to the withdrawal from the partnerships of Mildred Medd in 1956 and that of the plaintiff in 1969 as prior examples of the provision being applied by the parties.[2] While not ruling directly on whether Robert had effected a dissolution of the partnership, the trial court found that the defendants, by clear, satisfactory and convincing evidence, had shown that the 1947 co-adventure agree-

ment and its supplement, particularly the withdrawal or termination provision, constitute the controlling agreements between the Medd family members in their business activities. Finding plaintiff's share upon retirement was determined by the agreement, the trial court dismissed Robert's action.

Shortly after entry of the trial court's decree, the defendants tendered to the plaintiff an amount equivalent to his capital accounts in the partnerships pursuant to the withdrawal provision of the co-adventure agreement, which was accepted. In so doing, Robert specifically reserved his right to appeal the judgment and decree of the district court, accepting the check as it represented the admitted minimum amount due him. Robert then filed his notice of appeal to this court.

The following issues are presented for our consideration:

(1) Did plaintiff's acceptance of the amount tendered by the defendants render this appeal moot?

(2) Is our review of this case at law or in equity?

(3) Did the plaintiff dissolve the two family partnerships by giving the other partners notice of his intention to do so?

(4) Did the trial court err in ruling that plaintiff's share in the partnership assets upon his withdrawal was determined by the 1947 co-adventure agreement and in therefore not applying the otherwise applicable provisions of Iowa and Illinois law?

(5) Was the plaintiff entitled to interest on his capital account?

I. The defendants first contend that this appeal has been mooted by Robert's accept-

1. Paragraph 5 of the agreement states in part: "In the event any party is not satisfied and wishes to accelerate his withdrawal from this venture, then and in that event, he shall first offer his interest herein to the remaining coadventurers at a price determined as the book value of his interest in this venture as indicated by his capital account, as of the latest annual closing of the venture, less any withdrawals made by said retiring member since that said date."

2. Not long after having withdrawn from the partnership Robert sought readmission which was permitted by the family without additional consideration. That money already advanced to Robert was treated as having been drawn from his account in 1969, the balance sheet not evidencing a withdrawal from the partnership.

ance of the $68,755.00 offered by the defendants after entry of the trial court's judgment. They seek to raise this issue solely by inclusion in their brief. They have not filed a motion to dismiss or otherwise attempted to create a record on which to base their argument. While we express doubt as to whether the matter is properly before the court and specifically reserve ruling on the question, we find resolution of that issue unnecessary as we do not find merit in the defendants' mootness argument.

The amount tendered by the defendants shortly following the trial court judgment represents the amount which they contend is due the plaintiff on his withdrawal from the partnerships. It is the admitted minimum amount owed the plaintiff, the amount which the defendants argue is owed the plaintiff under the partnership agreement. In accepting the defendants' payment, Robert, by letter, made clear that he did not intend to waive his right to appeal, but was accepting the amount tendered as it was concededly the minimum amount due him.

Under these circumstances, we cannot conclude that Robert waived his right to appeal or accepted the payment as an accord and satisfaction of his claim. *See*, e. g., *Starke v. Horak*, 260 N.W.2d 406, 407–08 (Iowa 1977); *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 683–84 (Iowa 1976); *In re Marriage of Abild*, 243 N.W.2d 541, 543 (Iowa 1976). Just as we concluded that the appellate waiver doctrine should not be applied so as to discourage the early reparation of injured parties, *Starke v. Horak*, 260 N.W.2d at 408, neither should the doctrine prevent the disbursement of funds over which there is no disagreement. We hold that Robert did not waive his right to appeal in accepting the amount tendered by the defendants. In so ruling we place emphasis on the undisputed nature of the amount tendered and the fact that the defendants were informed of the conditions under which the acceptance was made. *See Starke v. Horak*, 260 N.W.2d at 407–08.

II. The defendants next contend that since the issues presented herein are largely legal in nature and do not involve complex accounting procedures, this case should be treated as a case at law for purposes of this appeal. Any merit which the defendants' position may have had is undermined by the timing of their contention. Our standard of review is determined by the nature of the trial proceeding. This action was filed and tried in equity. Our review is therefore de novo. *E. g., Jensen v. Schreck*, 275 N.W.2d 374, 378 (Iowa 1979); *Murphy v. Hahn*, 208 Iowa 698, 701, 223 N.W. 756, 759 (1929); Iowa R.App.P. 4. If the defendants had wished our review to be at law they should have advanced their position before the trial court so that the trial could have proceeded accordingly, if it had found their contentions compelling.

Having established our standard of review, we further note that we review the facts and law of the case and determine the appropriate disposition under all the circumstances. *Gibson v. Deuth*, 270 N.W.2d 632, 634 (Iowa 1978). While we give weight to the findings of the trial court, we are not bound by them. Iowa R.App.P. 14(f)(7).

As a preliminary matter we note that this action involves Illinois and Iowa partnerships and that resolution of the issues before us necessarily involves the application of both Illinois and Iowa law. Our task is somewhat simplified by the fact that both states have enacted the Uniform Partnership Act, *see* Uniform Partnership Act, Ill. Rev.Stat. ch. 106½ (1975) and ch. 544, The Code 1977, and a general similarity of the partnership law of both states. As the same issues are presented regarding both partnerships, we will be citing to Iowa and Illinois law regarding material points of law.

III. Initially we are faced with the issue of whether Robert effectuated the dissolution of the Davenport Dairy Queen and R & I Dairy Queen Stores partnerships when he notified his father and brothers of his intent to withdraw from the partnerships. The trial court made no finding that a

dissolution had or had not occurred. We will address the issue as dissolution is a requisite to "winding up" the partnerships, the procedure by which the plaintiff alternatively seeks relief.

The applicability of the Uniform Partnership Act (hereinafter UPA) is limited by section 4(5) of the Act which provides that the UPA should not be construed to impair any contract in effect when the Act went into effect. See Ill.Rev.Stat. ch. 106½, section 4(5); section 544.4(5), The Code. As the Illinois statute was enacted in 1917, no contract or action of the parties predates the effective date of the Act. The Iowa statute does not impair contractual obligations undertaken on or before July 1, 1971. See section 544.4(5), The Code. Thus there is a question as to whether any contract entered into by the Medds, specifically the 1947 co-adventure agreement, is inconsistent with the terms of the UPA. For the purpose of resolving this question we will assume, without deciding, that chapter 544 is applicable to the Davenport Dairy Queen partnership.

■ Section 544.29 defines dissolution: "The dissolution of a partnership is the change in the relation of the partners caused by a partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." Section 544.31 then provides in relevant part that dissolution is caused "by the express will of any partner when no definite term or particular undertaking [is] specified", subject to any agreement of the parties. The 1947 agreement and its supplement do not set forth a definite term and, to the extent that a specific undertaking is indicated, that was accomplished with the liquidation of the Ohio Dairy Queen interests. The dissolution provisions of chapter 544 are not inconsistent with any agreement of the parties,[3] and would therefore be applicable to the

family partnerships. The Illinois statute contains identical provisions regarding dissolutions. See Ill.Rev.Stat. ch. 106½, sections 29 and 31.

■ As indicated by both statutes, a dissolution merely connotes a change in the partnership relationship. Robert's withdrawal effected such a change. Estate of McKay v. Moses, 35 Ill.App.3d 458, 465, 343 N.E.2d 45, 52 (1976); Babray v. Carlino, 2 Ill.App.3d 241, 251, 276 N.E.2d 435, 442 (1971); Gibson v. Deuth, 270 N.W.2d 632, 635 (Iowa 1978); cf. Lunt v. Van Gorden, 224 Iowa 1323, 1327–28, 278 N.W. 631, 633–34 (1938) (subject to a possible action for breach of any agreement, the right to dissolve is inseparably incident to every partnership). Robert did dissolve the partnerships and we must determine whether the trial court erred in finding distribution of Robert's capital accounts to have "wound up" the dissolved partnerships.

IV. The trial court found that the defendants had established, by clear, convincing and satisfactory evidence, that the withdrawal provision of the 1947 co-adventure agreement was applicable to the partnerships in question by the agreement and conduct of the parties. Robert contends that the withdrawal provision is not applicable to the Davenport Dairy Queen and R & I Dairy Queen partnerships and that the UPA provision regarding the settlement of accounts after dissolution is applicable. Our examination of the record leads us to agree with the trial court.

■ Robert is correct to the extent that if the withdrawal provision were not applicable, section 544.40, The Code, and Ill.Rev. Stat. ch. 106½, section 40, would entitle him to the relief sought. The winding up procedure of both statutes is limited by "subject to any agreement to the contrary" terminology. See Ill.Rev.Stat. ch. 106½, section

---

**3.** All of Robert's brothers testified at trial that it was their understanding that the partnerships could be dissolved only by a majority of the partners. No such provision is contained in the 1947 agreement or its supplement. Aside from the fact that any partnership agreement must be shown by clear, satisfactory and con-

vincing evidence, e. g., Miller v. Miller, 249 Iowa 979, 984, 89 N.W.2d 871, 874 (1958), we conclude that they are confusing dissolution with termination of the partnership business operations which, as shall be indicated, are entirely separate and not necessarily concomitant procedures.

40; section 544.40, The Code. In both Iowa and Illinois the terms of a partnership agreement need not be formally expressed, but may be inferred or established, in whole or in part, from the acts of the parties. *Ramacciotti v. Simpkins*, 130 Ill.App.2d 733, 735, 266 N.E.2d 700, 702 (1970); *Humboldt Livestock Auction, Inc. v. B & H Cattle Co.*, 261 Iowa 419, 431, 155 N.W.2d 478, 486 (1967); *Pay-N-Taket, Inc. v. Crooks*, 259 Iowa 719, 724, 145 N.W.2d 621, 625 (1966); *Butler v. Lloyd*, 230 Iowa 422, 428–29, 297 N.W. 871, 875 (1941). The pivotal determination thus becomes whether the defendants have sustained their burden of proof. *See Miller v. Miller*, 249 Iowa at 984, 89 N.W.2d at 874.

■ Examination of the record leads us to conclude that the partners have intended to be bound by the withdrawal provision of the 1947 agreement. Although predating and thus facially inapplicable to the partnerships, the provision has clearly been adopted by the conduct of the partners. *See SRI Corp. v. First National Bank of Rock Island*, 75 Ill.App.3d 350, 355, 30 Ill. Dec. 940, 393 N.E.2d 1287, 1291 (1979). On the occasion of earlier withdrawals from the partnership, that of Mildred Medd, mother of the plaintiff, in 1956 and Robert in 1969, the withdrawing partners were given their capital accounts pursuant to the agreement.[4] This is consistent with the purpose behind the partnerships and the family corporation (which is not involved in this litigation as it has its own stock repurchase agreement): to provide an ongoing source of income for those family members who wished to remain associated with the business. *See* A. Bromberg, Crane and Bromberg and Partnership, section 90A (1968) ("Without an advance agreement, partnership dissolution typically brings unnecessary economic loss to one or both sides.

Agreements may be validly made for continuation of the business with a wide variety of dispositions or retentions of partnership interests, or substitutions of partners. They may be made effective at death, withdrawal, or other events which normally produce dissolution."). This purpose is evidenced by language in the 1947 agreement and consistent with the subsequent acts and common understanding of the parties. All the partners, with the exception of Robert and his father C. R. Medd who was ill at the time of trial, testified they had always understood that any withdrawing partners would receive their capital accounts. Richard Medd further testified that the 1947 agreement was also presented to a life insurance agent as the binding partnership agreement. It was at this time, possibly at the suggestion of the insurance agent, that the stock purchase agreement was executed as no withdrawal provision existed for the corporation. We hold that Robert's share upon dissolution of the partnerships is determined by the withdrawal provision of the 1947 agreement, which the record clearly shows to have been adopted by the parties.

Enforcement of this provision, allowing continuation of the family business, is an effective means of winding up the partnership dissolved by the plaintiff. *Gibson v. Deuth*, 270 N.W.2d 632, 635 (Iowa 1978); *Wolf v. Murrane*, 199 N.W.2d 90, 99 (Iowa 1972); cf. *SRI Corp. v. First National Bank of Rock Island*, 75 Ill.App.3d at 354, 30 Ill.Dec. at 944, 393 N.E.2d at 1291, (Partnership may continue despite change in membership.). Other jurisdictions have reached a like result in enforcing agreements regarding the dissolution and winding up of partnerships. E. g., *Frank v. R. A. Pickens and Son Co.*, Ark., 572 S.W.2d 133 (1978);

---

4. It is undisputed that Mildred Medd received her capital accounts upon leaving the partnerships. Robert contends that he did not receive the amount of his capital accounts. There was not an absolute correlation between the amount he received and his capital accounts at that time, although the difference can be understood to incorporate an adjustment for Robert's waiver of stock repurchase agreement in a fam-

ily corporation, as the trial court found. This finding is buttressed by the fact that the pro rata share of a partner in the market value of the partnership was considerably greater than the amount he received or in his capital accounts. Thus the amount he actually received was much closer to the value of his capital accounts than what he now contends to be due him.

*Maras v. Stilinovich*, Minn., 268 N.W.2d 541 (1978); *Ordway-Saunders Co. v. Little*, 568 S.W.2d 711 (Tex.Civ.App.1978).

V. The plaintiff contends that the trial court erred in not awarding him interest. Robert petitioned for partition of the partnerships' assets or distribution of the cash equivalent. The trial court concluded that he was not entitled to the relief sought and dismissed the action. Thus plaintiff's action did not directly involve the amount which was eventually tendered. Additionally Robert did not request interest in his prayer for relief. This alone is fatal to his contention. *See Bosch v. Garcia*, 286 N.W.2d 26, 27–28 (Iowa 1979); *Laverty v. Hawkeye Security Insurance Co.*, 258 Iowa 717, 728, 140 N.W.2d 83, 89 (1966). We find no error.

VI. In summation we hold: (1) the plaintiff's appeal was not mooted by his acceptance of the amount which was admittedly the minimum amount owed him by the defendants; (2) our review in this case brought and tried in equity is de novo; (3) Robert did dissolve the partnerships by withdrawing from them; (4) the trial court was correct in finding that the parties had made the withdrawal provision of the 1947 co-adventure applicable to the family partnerships by their conduct and common understanding; and (5) the trial court was correct in not awarding interest. The judgment and decree of the district court is therefore affirmed.

AFFIRMED.

All Justices concur, except HARRIS, J., who concurs in the result.