Victor GIBSON,
Appellee-Cross-Appellant,

v.

Gerald DEUTH,
Appellant-Cross-Appellee.

No. 61195.

Supreme Court of Iowa.

Oct. 18, 1978.

Rehearing Denied Nov. 17, 1978.

Upton B. Kepford of Kennedy, Kepford, Kelsen & White, Waterloo, for appellant/cross-appellee.

William C. Ball of Ball & Nagle, P.C., Waterloo, for appellee/cross-appellant.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP and HARRIS, JJ.

REYNOLDSON, Chief Justice.

This action for partnership accounting is before us for the second time. See *Gibson v. Deuth,* 220 N.W.2d 893 (Iowa 1974). We again reverse and now remand with directions.

A's set out in our prior decision, plaintiff Victor Gibson and defendant Gerald Deuth, both registered architects, operated as equal partners under a 1956 oral agreement. Plaintiff withdrew November 1, 1966, thereby dissolving the partnership as of that date. See *Owen v. Wilden Hospital, Inc.,* 245 Iowa 382, 389, 62 N.W.2d 186, 190 (1954); 2 J. Barrett & E. Seago, Partners and Partnerships ch. 8, § 2.1 (1956). Defendant continued the business without significant interruptions and finished all pending projects.

Defendant in 1968 sent plaintiff a check for $6,642.23, of which $400 was for equipment and supplies retained by defendant, an undisputed item. The remainder pur-

ported to constitute a final partnership accounting. Plaintiff cashed the check under protest and commenced this accounting action. He ultimately claimed $9,773.67 in additional profits from pending projects.

Defendant asserted plaintiff's acceptance of the settlement check constituted a binding accord and satisfaction. This theory was rejected by trial court and by this court on appeal. *Gibson*, 220 N.W.2d at 895–97.

The other fighting trial issue, as we noted in our first opinion, concerned "fees earned as of the dissolution date on three executory contract projects, i. e., Trinity Lutheran, Grace Lutheran and Hoover Junior High." *Gibson*, 220 N.W.2d at 894. Plaintiff claimed a half share of the fees earned before November 1, 1966, but paid afterwards. Defendant disputed the amount but not the validity of plaintiff's claim.

Three days after the case had been submitted defendant moved to dismiss because plaintiff had introduced no evidence these executory contracts had resulted in a profit or loss. In the alternative, he moved to reopen for evidence that two of the three projects in issue had been completed by defendant at a loss for which he was entitled to proportionate recovery from plaintiff. Both motions were overruled and defendant's appeal challenged those rulings.

This court held the prior settlement offer established defendant possessed assets belonging to plaintiff and therefore imposed a duty on the former to provide a 'full accounting. 220 N.W.2d at 897. We granted a limited remand to accord defendant an opportunity "to present further evidence confined to the showing of relevant losses and expenses, if any, not previously shown which attended the instantly involved contracts." *Id.* at 898.

On remand evidence was presented of the actual construction bids on two of the projects, accepted subsequent to the November 1, 1966, cutoff date. These of course fixed the exact amount of the architects' total fees. Also adduced was evidence of certain expenses relating to these disputed contracts, incurred before November 1, 1966, but paid later.

Defendant was permitted to introduce evidence of time he spent in finishing the three projects, an item asserted for the first time to be a partnership expense.

In its ruling on remand, trial court first concluded plaintiff had received all but $170 of the amount owed him, then extinguished that indebtedness by deciding defendant "should be credited with the sum of $31,300 as the fair and reasonable value of his services for the completion of the partnership business." Trial court rendered judgment for defendant, but for costs only.

Both parties appeal. Defendant challenges trial court's failure to enter judgment in his favor for half the value of his services subsequent to November 1, 1966. Plaintiff, cross-appealing, contends trial court on remand did not take pre-dissolution percentage of completion into proper account when computing profits owed him for the pending projects.

I. This action for an accounting is equitable in nature, *Wolf v. Murrane,* 199 N.W.2d 90, 100 (Iowa 1972), and our review is de novo. Rule 14(f)(7), Rules of Appellate Procedure. We review the facts as well as the law and reach an appropriate conclusion under all the circumstances. *Engel v. Vernon,* 215 N.W.2d 506, 512 (Iowa 1974). The issues raised will be treated collectively in the divisions which follow.

II. At time of dissolution the partnership had three sizable projects underway: Trinity American Lutheran Church (Trinity), Grace Lutheran Church (Grace), and Hoover Junior High School (Hoover). This litigation commenced because the parties could not agree on how much of each project was performed before the dissolution. Plaintiff consistently proceeded on the theory he was entitled to half of all profits (fees less expenses) earned before November 1, 1966. The partners obviously contemplated defendant would carry on the business as a going concern and retain all the profits from the three projects accruing after the dissolution.

Defendant did not dispute plaintiff's theory until the first trial was over. In fact, defendant's two written attempts to settle the dispute (the tendered check and an accounting attached to defendant's answer, and an earlier accounting attached to plaintiff's petition) proceeded on the same basis: no post-dissolution profits for plaintiff and no charge for defendant's time in completing the projects.

On the first trial the court concurred in the theory upon which the partners had proceeded. It specifically found defendant assumed responsibility for completing the three projects and was therefore entitled to all profits earned after dissolution, "but must bear the expenses involved in completing them." Plaintiff's right to an accounting was restricted to the portions of the projects completed before dissolution.

The current problem was created in the first trial when plaintiff sought to prove actual fees and expenses, ascertained after dissolution, as bearing on the financial status of the partnership on November 1, 1966. Defendant objected, asserting these items could be proved only by using estimates available at the cutoff date.

Our prior remand was "confined to the showing of relevant losses and expenses, if any, not previously shown." This should have been interpreted to mean only that in determining what portion of a project's profits or losses were attributable to work done before dissolution, evidence of actual fees and expenses, whenever available, should be used instead of estimates. We did not rule that a withdrawing partner like plaintiff shares in the fees and expenses resulting from post-dissolution work on projects assumed by another partner who, like defendant, chooses to carry on the business as a going concern.

*Wolf v. Murrane,* 199 N.W.2d at 90, cited in our first opinion, addressed a similar situation. The "winding up" of that partnership was accomplished by an "agreement" that the Murranes would assume all partnership obligations and continue to operate the business alone. We equated this to a sale by the withdrawing partners of their share, *upon dissolution,* to the continuing partners. We held trial court erred in rejecting evidence of the "actual amount of profit attributable to unfinished business as of [dissolution] but now completed." *Id.* at 99.

In *Engel v. Vernon,* 215 N.W.2d at 515, we held commissions earned on sales made before the partnership dissolution were assets distributable to the partners regardless of when collected. There both former partners continued to operate basically as before, but post-dissolution profits were not shared. The accounting was limited to the date of the dissolution.

■ It is true, of course, that a partnership dissolution ordinarily does not result in immediate termination. Withdrawal from a partnership causes dissolution. Termination occurs only after winding up of partnership affairs is completed. See §§ 544.29 and .30, The Code 1977 (Uniform Partnership Act, not applicable to this 12-year-old controversy); 2 Barrett & Seago, *supra,* at ch. 8, § 1; 60 Am.Jur.2d Partnerships § 171 (1972).

■ Winding up usually entails the time necessary for the partners to finish old business, collect and pay debts, and finally distribute remaining assets to the partners. *Wolf v. Murrane,* 199 N.W.2d at 99. It is the duty of all partners to settle the partnership's affairs. 60 Am.Jur.2d Partnerships § 230; 68 C.J.S. Partnerships § 383 (1950). When all partners participate, all profits earned (or losses suffered) upon completion of existing business are shared.

However, if one or more partners desire to take over and continue the business, settlement of partnership affairs and termination can be, at least for valuation purposes, contemporaneous with dissolution. Expressly or by implication the withdrawing partner and the surviving partner agree to a transfer of the business. Value of a withdrawing partner's share thus would include his percentage of profits earned before dissolution because they are partnership assets. On the other hand, the withdrawing partner does not share in profits

earned after dissolution because they are earned by an entity to which he does not belong. 55 A.L.R.2d 1391, 1412 (1957). These are the circumstances surrounding *Wolf v. Murrane* and the case before us.

■ As indicated in our prior opinion, on initial submission trial court erred in relying on old estimates when actual fees and expenses had become available before trial. Any evidence of fees or expenses attributable to work completed before dissolution, regardless of when received or paid, should have been admitted. But nothing in that opinion holds the accounting should have been extended to matters occurring after November 1, 1966. On remand, trial court's reception and use of evidence of fees and expenses wholly attributable to work done by Deuth after dissolution was error.

It follows defendant's evidence of value of his time spent in finishing Grace, Trinity and Hoover, submitted as a partnership expense, should not have been considered on remand. That portion of the fees attributable to work done after dissolution, less expenses, was the unshared profit to which defendant alone was entitled. *Cf., Consaul v. Cummings*, 222 U.S. 262, 270, 32 S.Ct. 83, 84–85, 56 L.Ed. 192, 197 (1911).

III. Our above analysis signals our resolution of the issues raised. In our de novo review we shall now determine the amount defendant still owes plaintiff, and terminate this litigation.

Trial court in the initial submission of this case made three conclusions of "law." First, it concluded the simplistic contractual schedule for fee payment, although binding between architect and client, was not necessarily relevant in determining how much work had been done on a project as of the dissolution date. Second, it determined to use estimates whenever actual figures were not available as of November 1, 1966. Third, it prorated cost of outside engineering services over the entire contract term, apparently because of the inequity in assigning a specific date at which these expensive services were incurred.

Only the second premise for trial court's first decision was challenged here. Neither party has ever disputed the trial court's determination as to percentage of completion for each project, or its method of prorating engineering expenses. We find no reason to disturb these parts of the district court adjudication.

Accordingly, we have examined each project to determine how much, if any, of the fee paid to defendant should have been paid the partnership, and after proper deduction for expenses, shared equally.

A. *Grace project.* The trial court estimated a $14,700 fee; the actual fee was $19,858.34. Engineering expenses were estimated at $2200, but actually totaled $3379.70. The trial court on initial submission found the architect's work 35 percent completed on dissolution date. Subject to other adjustments hereafter described, the profit to November 1, 1966, was $5767.52. Only $4215.75 was distributed. Of the difference retained by defendant, one-half, or $775.88 is owing to plaintiff.

B. *Trinity project.* The total fee was estimated at $19,500, but $20,134.05 was paid. Engineering expenses were estimated at $3000, but totaled $3693.79. Trial court found the work was 25 percent completed at dissolution date. Of the $4110.06 profit, only $981.25 was distributed. Defendant owes plaintiff $1564.40 on the project.

C. *Hoover project.* All fees and expenses for all phases of this work except final inspection and supervision were received and paid before November 1, 1966. The original contract fee for the final inspection and supervision stage was $18,253.36, engineering expenses were $2582.51, and 67 percent of the supervision and inspection was completed. Only $7833.74 of the $10,499.47 in pre-dissolution profits was shared. Defendant owes plaintiff $1332.86 as his profit share from this project.

Apart from the above maldistribution, we find the distribution of other partnership assets was unequal. A total of $24,219.29 in assets, including bank accounts and accounts receivable paid after November 1,

1966, but less miscellaneous pre-dissolution expenses paid after November 1, 1966, was distributed. Defendant received $3039.99 more than Gibson, and owes plaintiff half this sum, or $1520.

Thus we find plaintiff was entitled to $5193.14 in pre-dissolution profits which were not paid to him. Plaintiff obtained $948.42 of this indebtedness through a 1972 garnishment. Plaintiff should have judgment against defendant for the balance, $4244.72.

This sum should draw interest at the statutory rates prevailing after April 8, 1968, the date defendant, who retained the account and assets, alleges in his answer he forwarded a final accounting and settlement check to plaintiff. See *Wolf v. Murrane*, 199 N.W.2d at 100 ("The general rule, in absence of a written agreement to the contrary, is that interest is not to be allowed on partnership assets until after a balance has been struck; however, interest may be charged under the circumstances of the case, if the equities require.").

We reverse and remand with directions to enter judgment in conformance herewith.

AFFIRMED ON DEUTH'S APPEAL; REVERSED ON GIBSON'S CROSS–APPEAL AND REMANDED WITH DIRECTIONS.