Harry **WEISBROD**, Appellant (Plaintiff),

v.

Nancy **ELY**, Appellee (Defendant).

No. 88–24.

Supreme Court of Wyoming.

Jan. 10, 1989.

Bret F. King of King & King, Jackson, for appellant.

David R. Hansen, Jackson, for appellee.

Before CARDINE, C.J., THOMAS and MACY, JJ., and GUTHRIE and BROWN *, JJ., Ret.

CARDINE, Chief Justice.

This was an action by appellant Harry Weisbrod seeking a judicial winding up and termination of a partnership, appointment of a receiver, and a formal accounting. After a bench trial, the court found the value of Weisbrod's interest in the partner-

* Retired June 30, 1988.

ship to be $1,511 and entered a judgment against appellee Nancy Ely, his former partner, for that amount plus interest. Weisbrod now appeals from that judgment and raises the following issues:

"1. Whether the District Court was correct in its refusal to order a winding up and termination of the partnership affairs.

"2. Whether the District Court was correct in its refusal to grant Appellant post-dissolution profits of the partnership.

"3. Whether the District Court was correct in its refusal to grant Appellant a formal accounting of the partnership affairs.

"4. Whether the District Court was correct in its finding that Appellant was not wrongfully excluded by Appellee from participating in the winding up and termination of the partnership.

"5. Whether the District Court was correct in valuing Appellant's interest in the partnership as of December 31, 1984, to be $1,511.00."

We affirm.

## FACTS

In the spring of 1981, Weisbrod and Ely executed a written partnership agreement forming a partnership to conduct a property management business. Under the agreement the parties were to share in profits and losses in proportion to their ownership interests. Weisbrod initially contributed $2,000 and Ely $8,233 for ownership interests of 20% and 80%, respectively. The partnership later bought a truck for approximately $3,400. Each partner paid one-half the cost of the truck.

The agreement provided that Ely was to be the sole managing partner. As such, Ely conducted the day-to-day business of the firm, while Weisbrod's role was limited to sharing of profits and losses. The partnership continued in business under the agreement until late 1984 when Ely informed Weisbrod that the partnership would terminate on December 31, 1984, and that she would continue the business on her own. Weisbrod objected, indicating that he wished to continue the partnership. At that time, there was no discussion or agreement concerning winding up or termination of the partnership.

In January of 1985, Ely offered to buy Weisbrod's 20% share in the partnership for $993.30 and tendered to him a check in that amount. Weisbrod rejected the offer, indicating that he considered the $933.30 offer inadequate. Each party obtained a separate appraisal of the value of the partnership as of December 31, 1984. Weisbrod's appraisal valued the partnership at $22,000. Ely's appraisal showed a value of $5,305.

In February 1985, Ely tendered a check for $1,511 as payment for Weisbrod's 20% partnership interest. Weisbrod rejected the $1,511 check and countered with an offer to sell his 20% for $3,000, or, in the alternative, to purchase Ely's 80% for $3,794. Ely responded by reoffering $1,511, which she characterized as her final offer. In late March 1985, Weisbrod reiterated his offer to purchase Ely's share for $3,794, revoked his offer to sell for $3,000, and offered to sell for $4,000.

Following the failure of the parties to agree on the value of the partnership, this litigation was commenced by Weisbrod in January of 1986. Ely continued to operate the business from December 1984 to the time of trial with Weisbrod's consent. At trial, both parties introduced conflicting evidence concerning the value of the partnership. The court found the value of Weisbrod's share in the partnership to be $1,511 and entered a judgment in favor of Weisbrod for that amount, plus interest for the period of January 1, 1985, until date of judgment.

## DISCUSSION

The partnership agreement covered dissolution by mutual agreement of the partners and by retirement or death of a partner. It did not provide a method for resolving the dispute that arose when Ely unilaterally sought to terminate the partnership and continue the business. Thus, we look to Wyoming's codification of the Uniform

Partnership Act, W.S. 17–13–101 through 17–13–615, which provides the applicable rule: "Dissolution is caused * * * [b]y the express will of any partner when no definite term or particular undertaking is specified." W.S. 17–13–603(a)(i)(B). By summary judgment prior to trial, the court found that dissolution occurred on December 31, 1984.

■■■ Dissolution of a partnership is defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." W.S. 17–13–601. Dissolution is the first of three stages in the ending of a partnership. The next two stages are winding up and termination. *Simpson v. Kistler Inv. Co.*, 713 P.2d 751 (Wyo.1986). Winding up is the process of settling partnership affairs after dissolution. *Matter of Trust Estate of Schaefer*, 91 Wis.2d 360, 283 N.W.2d 410 (Ct.App.1979); Uniform Partnership Act § 29, 6 U.L.A. 364 (comment) (1969). Termination is the point in time when all the partnership affairs are wound up. *Thickman v. Schunk*, 391 P.2d 939 (Wyo.1964); W.S. 17–13–602.

Generally, winding up encompasses the liquidation of partnership assets, collection and payment of debts, and distribution of the surplus to the partners. *Gibson v. Deuth*, 270 N.W.2d 632 (Iowa 1978). Liquidation of assets, however, is not the only option following dissolution. The partnership business may be continued with the consent of the outgoing partner. Neither party here contests the finding by the trial court that Ely continued the business with Weisbrod's consent after dissolution.

The parties agreed that W.S. 17–13–614 determines the rights of Weisbrod, and the trial court relied on the statute to render its decision; therefore W.S. 17–13–614 became the law of the case. See *Caldwell v. Yamaha Motor Co., Ltd.*, 648 P.2d 519 (Wyo.1982). We do not decide whether W.S. 17–13–614 applies to a partner who is excluded from the partnership by unilateral dissolution pursuant to W.S. 17–13–603(a)(i)(B), as that question is not presented. W.S. 17–13–614 provides in relevant part that when a business is continued, an outgoing partner

"may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option * * *, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership * * *."

I

■■■ In his first argument, Weisbrod claims error by the trial court because it did not appoint a receiver to take control of the partnership assets to conduct the winding up and termination of the business. He contends this constitutes a "refusal" by the court to wind up and terminate the partnership, despite the court's order for Ely to pay him the value of his share of the partnership.

Weisbrod misconstrues the effect of the trial court's disposition. In this case, winding up was completed when the court determined the amount due Weisbrod under W.S. 17–13–614 and entered judgment ordering that amount be paid. Upon completion of winding up, the partnership was terminated. W.S. 17–13–609 provides that any partner, for cause shown, may obtain winding up by the court. Appointment of a receiver is not required by W.S. 17–13–609, but is within the discretion of the trial court, controlled by the circumstances of each case. *Barrett v. Green River & Rock Springs Live Stock Co.*, 28 Wyo. 379, 205 P. 742 (1922).

A matter which is left to the discretion of the trial court will not be disturbed on appeal in the absence of a demonstrated abuse of discretion. *Urich v. Fox*, 687 P.2d 893 (Wyo.1984). We have defined judicial discretion as

"a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Mar-*

*tin v. State,* 720 P.2d 894, 897 (Wyo. 1986).

Under the circumstances presented here, we find no abuse of discretion in the court not appointing a receiver.

## II

Weisbrod argues that he is entitled to a 20% share of the profits earned by the business during the period between dissolution and trial. He bases this claim on the language of W.S. 17–13–614, which allows an outgoing partner to chose between

> "an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option * * *, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."

The trial court found no post-dissolution profits attributable to Weisbrod's rights in the partnership property. It determined that the profits were attributable to the personal services of Ely.

■ The testimony at trial indicated that the initial contributions of capital by the partners were used to acquire furniture and fixtures for the office of the business. Later contributions financed the purchase of a truck. These items of personal property were used by the business after dissolution and were the assets which were the basis of the valuation of Weisbrod's interest in the partnership. The issue presented, then, is the amount of profits that can be attributed to the use of Weisbrod's right in this property. Several cases from other states have dealt with the "profits attributable" language of § 42 of the Uniform Partnership Act, which is equivalent to W.S. 17–13–614. The majority position, which we adopt, is that when profits earned after dissolution and before a final accounting are attributable in part to the personal skill or services of a partner, it is a factor to be considered in apportioning the shares of the partners. *Essay v. Essay,* 175 Neb. 730, 123 N.W.2d 648 (1963); *Hilgendorf v. Denson,* 341 So.2d 549 (Fla. App.1977); *Schoeller v. Schoeller,* 497 S.W.2d 860 (Mo.Ct.App.1973); *Timmermann v. Timmermann,* 272 Or. 613, 538

P.2d 1254 (1975); *Bracht v. Connell,* 313 Pa. 397, 170 A. 297 (1933). The court should determine the fair value of such services by considering the nature of the work, the time spent, and the skill involved. *Bracht,* supra.

■ It is undisputed that Weisbrod did not contribute services to the partnership. The evidence presented established that Ely conducted all of the business, provided all services, and profits earned were attributable to her labor rather than to the existence of office furniture. The business of property management in this case differs from businesses involving sale of goods and materials. In the latter case, an outgoing partner who has invested in inventory would be entitled to his proportionate share of any profits derived from their subsequent sale. In contrast, in a service business all that is sold to produce income are the services of the firm—here, the property management services of Ely. We conclude that it was not error for the trial court to find that there were no post-dissolution profits attributable to the property rights of Weisbrod.

■ Weisbrod also argues that he is not required to elect whether to receive profits in lieu of interest until after valuation of his interest and the profits attributable to it. We agree with the proposition that the right of election under W.S. 17–13–614 is not a meaningful right unless the outgoing partner knows the value of his respective choices. *Moseley v. Moseley,* 196 F.2d 663 (9th Cir.1952); *Lange v. Bartlett,* 121 Wis.2d 599, 360 N.W.2d 702 (1984). The trial court in this case entered a final judgment which awarded Weisbrod interest without allowing an opportunity for election between interest and profits. After Ely was compensated for her services, there were no post-dissolution profits attributable to Weisbrod's interest. In light of the trial court's finding that there were no profits in which Weisbrod could share, the failure to provide for election between profits and interest was harmless error. We will not reverse in the absence of a showing of prejudice to substantial rights

of appellant. *Anderson v. Bauer*, 681 P.2d 1316 (Wyo.1984).

### III

■ In his third argument, Weisbrod contends that the district court refused to grant him a formal accounting and that this refusal was error. He bases this contention on W.S. 17–13–405, which provides, inter alia, that a partner has a right to a formal account when he has been wrongfully excluded from the partnership or when a partner is accountable as a fiduciary under the provisions of W.S. 17–13–404. It is not necessary to consider the possible application of W.S. 17–13–405 in this instance because the right to an account described therein is merely supplemental to the right to an account under W.S. 17–13–615.

W.S. 17–13–615 provides:

"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or the partnership continuing the business, at the date of dissolution, in the absence of an agreement to the contrary."

Under this statute, Weisbrod's right to an accounting accrued when the partnership was dissolved. That there was a right to an accounting, however, does not establish that an accounting was refused.

In the context of a partnership dissolution, an accounting is an action to determine the rights and liabilities of the partners. "An accounting generally imports an adjustment of the dealings or accounts of the parties." *Fitzpatrick v. Rogan*, 28 Wyo. 231, 247, 203 P. 245, 250 (1922). The effect of this litigation was an accounting in the trial court. The major issues were determination of Weisbrod's interest in the partnership and his right to profits. The parties introduced into evidence the income and expense statements of the partnership for all the relevant years, conflicting appraisals of the value of the business, and testimony concerning the business affairs of the partnership. While Weisbrod disagrees with the findings of the court based upon that evidence, we find no basis to hold that he was denied his right to "an account of his interest" granted by W.S. 17–13–615.

■ Weisbrod appears to argue that the procedure used was not correct, as witnessed by his insistence that a "formal" accounting is required. He does not present his interpretation of what a formal accounting consists of, but his argument suggests that it is something other than a proceeding conducted by the district judge. While the district court may appoint a master as defined in Rule 53(a), W.R.C.P. to conduct an accounting, it is not required to do so. Such action is within the discretion of the court, to be taken after consideration of the complexity of the issue and the potential expense and delay a reference to a master might involve. See *Adventures in Good Eating, Inc. v. Best Places to Eat, Inc.*, 131 F.2d 809 (7th Cir.1942). Given the relatively simple nature of the accounting here, we find no abuse of discretion.

### IV

■ In Weisbrod's fourth argument, he disagrees with the trial court's finding that he was not wrongfully excluded from participation in the winding up of the partnership. He argues that Ely's actions contravened a section of the partnership agreement dealing with dissolution by mutual agreement, and "the provisions of the Uniform Partnership Act." He continues by stating that "[t]he evidence has clearly shown" that he was prevented from participating in the winding up and termination of the business.

This perfunctory argument does not rise to the level of cogent argument supported by pertinent authority, which we have stated many times is a requirement for consideration by this court. *Kipp v. Brown*, 750 P.2d 1338 (Wyo.1988). Further, vague references to the Uniform Partnership Act and "the evidence" do not comply with Rule 5.01, W.R.A.P., which states that the argument section of a brief shall contain "citations to the authorities, statutes and parts of the record relied on." Rule 5.01(4), W.R.A.P. Therefore, we decline to

consider this contention. Rule 1.02, W.R. A.P.

## V

In Weisbrod's fifth and final argument, he asserts error in the trial court's valuation of his interest in the partnership. His assertion is based on a claim of conflict between an oral statement made by the judge during trial and written findings made by the court in its final judgment. He also contends that the appraisal introduced by Ely was not properly calculated. When an inconsistency exists, express written findings will supersede informal oral remarks made from the bench.° *Gill Mortuary v. Sutoris, Inc.*, 207 Kan. 557, 485 P.2d 1377 (1971); *Newton v. State Road Comm'n*, 23 Utah 2d 350, 463 P.2d 565 (1970); cf. *McAteer v. Stewart*, 696 P.2d 72 (Wyo.1985) (written order takes precedence over prior oral order).

The value of Weisbrod's interest in the partnership is a question of fact. When reviewing a factual issue on appeal, we accept the evidence of the prevailing party as true, leaving out entirely the evidence presented in conflict therewith, giving every favorable inference which may be fairly and reasonably drawn from the prevailing party's evidence. *Pancratz Company, Inc. v. Kloefkorn-Ballard Constr./Dev., Inc.*, 720 P.2d 906 (Wyo. 1986). Although judgment was granted in favor of Weisbrod, the court had accepted Ely's appraisal of the value of the partnership, and she was the prevailing party on this issue. *Anderson v. Foothill Industrial Bank*, 674 P.2d 232 (Wyo.1984). While there was conflicting evidence presented at trial, the evidence presented by Ely supported the finding of the trial court. The trial court's findings are presumed correct and will not be disturbed on appeal unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. *Pancratz*, supra. We find no error in the value determined by the trial court.

The judgment of the trial court is affirmed.