Hinkle, J.
Plaintiffs, Muddy River Investment Corporation (Muddy River) and Tilton Development Corporation (Tilton), commenced this action against defendants, Parkway Development Company, Inc. (Parkway Development), Paul A. Faraca and Keith Kingsbury as Trustees of Parkway Realty Trust, seeking a declaratory judgment and damages for breach of contract and breach of fiduciary duty. The Court previously permitted Parkway Limited Partnership (Parkway Limited) to intervene as a defendant. Plaintiffs move under Mass.R.Civ.P. 56 for summary judgment on all counts of their complaint. Parkway Limited filed an opposition to the motion, upon which Parkway Development and Parkway Really Trust rely.
At the hearing on this matter plaintiffs stated that, at this point, damages are secondary to the relief they seek by declaratory judgment. Specifically, Muddy River seeks a declaration that it is entitled to demand payment of a promissory note due from Parkway Realty Trust to Muddy River and, failing satisfaction of the same, to foreclose on its security interest in two promissory notes and a related mortgage held by Parkway Realty Trust. Additionally, Tilton, as a member of the Parkway Development Joint Venture, seeks a declaration that Parkway Development effect a dissolution of the joint venture within a reasonable time following its termination on September 18, 1995 by directing the Parkway Realty Trust, of which the joint venture is the sole beneficiary, to collect the two secured promissory notes due from Parkway Limited, repay its obligations and distribute any surplus to the joint venture.
BACKGROUND
In 1980, Parkway Development acquired an option to purchase property located at 245 Pond Avenue, Brookline, . Massachusetts (the Park Apartments). In order to obtain financing to purchase the Park Apartments, Parkway Development approached The Provident Institution for Savings (the Provident). As a result of negotiations between Parkway Development and the Provident, on September 18, 1980, Parkway Development entered into a joint venture agreement with Bay State Improvement Corporation (Bay State). At the time of this transaction, Bay State was a wholly owned subsidiary of the Provident.
The joint venture, named Parkway Development Joint Venture, is the sole beneficiary of the Parkway Realty Trust, a Massachusetts nominee trust created under, a declaration of trust dated September 18, 1980. By the express terms of §1.7 of the Joint Venture Agreement as modified by §3 of the First Modification of the Joint Venture Agreement “(t]he term of this Joint Venture shall be 15 years from [September 18, 1980).” Section 7.2 of the Joint Venture Agreement entitled “Distribution” provides:
Upon the termination of this Agreement and the Joint Venture, provision shall be made for payment of the liabilities of the Joint Venture, and the net assets of the Joint Venture shall be distributed to the parties as otherwise herein provided, but, until such payment and distribution, this Agreement shall remain in full force and effect.
On September 18, 1980, the Provident loaned Parkway Realty Trust the funds to purchase the Park Apartments. Parkway Really Trust executed a promissory note payable to the Provident in the original principal amount of $1,427,000 (First Parkway Realty Note). The First Parkway Really Note was secured by a mortgage on the Parkway Apartments.
From 1980 through 1984 the Park Apartments remained undeveloped.[4] On April 24, 1984, Parkway Realty Trust sold the Park Apartments to Parkway Limited. As payment for the property, Parkway Limited executed two promissory notes payable to Parkway Realty Trust in original principal amounts of $2,656,527.78 and $79,060.94 (the Parkway Limited Notes). The Parkway Limited Notes were secured by a second mortgage on the Park Apartments. The express terms of the Parkway Limited Notes state that the maturity date is “Ten (10) years from the Date of this Note,” April 24, 1984.
In order to obtain the Provident’s approval for the sale, Parkway Realty Trust executed a promissory note payable on demand to the Provident in an original principal amount of $2,192,407.37 (the Second Park *527 way Really Note). The Second Parkway Realty Note cancelled and replaced the First Parkway Really Note. As substitute collateral for the mortgage which had secured the First Parkway Realty Note, the Parkway Realty Trust entered into the Pledge-Collateral Assignment Agreement (the Parkway Realty Pledge) with the Provident. By this agreement, the Parkway Realty Trust pledged the Parkway Limited Notes and the accompanying mortgage as security for the Second Parkway Realty Note.
The Second Parkway Realty Note was subject to a side letter (the Side Letter) between the Provident and Parkway Realty Trust. The Side Letter provided that the Provident would not demand payment of the Second Parkway Realty Note while payments on the note were being made in accordance with the Joint Venture Agreement.[5] In or around 1988, Shawmut Bank acquired the Provident and thereby acquired the Provident’s interest in the Second Parkway Realty Note and the Parkway Realty Pledge. In November, 1994, Shawmut sold and assigned its interest in the Second Parkway Realty Note and the Parkway Realty Pledge to New England Real Estate Advisors, Inc. (NEREA). In turn, on June 29, 1995, NEREA sold and assigned its interest in the Second Parkway Realty Note and the Parkway Realty Pledge to Muddy River.
On or about November 8, 1994, Bay State sold and assigned its interest in the joint venture to NEREA. The Joint Venture Agreement, however, contains a provision restricting the transfer of a joint venturer’s interest. Section 5.1, “Restrictions on Assignment” states in pertinent part:
Neither party shall have any right to transfer any part of its interest under this Agreement to any other party, except that Bay State may transfer its entire interest under this Agreement and in the Joint Venture to a wholly-owned subsidiary of Bay State or of The Provident, or to The Provident itself, provided such transferee assumes all of Bay State’s obligations hereunder.
Subsequently, on or about June 29,1995, NEREA sold and assigned its interest in the joint Venture to Tilton.
Parkway Realty Trust has made no payments toward the amount due under the Second Parkway Realty Note. Similarly, Parkway Limited has not made any payments under the Parkway Limited Notes.
The Parkway Limited Notes matured on April 24, 1994. No legal action has been commenced to collect the notes.
After the Parkway Limited Notes matured on April 24, 1994, at the request of the joint venture, Parkway Really Trust, notified Parkway Limited, by letter dated June 1, 1994, that the Parkway Limited Notes had become due and demanded that Parkway Limited satisfy the notes in full. Other than this letter, Parkway Realty Trust has taken no action to enforce its rights under the Parkway Limited Notes.
In January 1995, NEREA, as successor to Bay State’s interest in the joint venture and assignee of the Second Realty Trust Note, demanded that Parkway Realty Trust collect the Parkway Limited Notes from Parkway Limited by foreclosing on the mortgage which secured the notes. Parkway Realty Trust has not complied with this demand.
By letter dated July 7, 1995, Muddy River repeated NEREA’s previous demand to Parkway Realty Trust to collect the Parkway Limited Notes by foreclosing on the mortgage. Muddy River also notified Parkway Realty Trust of its intention to collect the Second Parkway Realty Note when it became due and payable on September 18, 1995. In response to Muddy River’s letter, Parkway Limited, by letter dated July 20, 1995, informed Muddy River that Muddy River was not entitled to payment of the Second Parkway Realty Note.
DISCUSSION
Summary judgment shall be allowed where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
A. Standing
As a threshold matter, defendants allege that Tilton and Muddy River lack standing to enforce their rights under the promissory notes at issue. According to defendants, Tilton lacks standing to assert rights under the Joint Venture Agreement because Bay State’s transfer of its interest in the joint venture to NEREA was prohibited by §5.1 of the Joint Venture Agreement and thus is invalid, as is NEREA’s subsequent transfer to Tilton.
Section 5.1, “Restrictions on Assignment” states in pertinent part:
Neither party shall have any right to transfer any part of its interest under this Agreement to any other party, except that Bay State may transfer its entire interest under this Agreement and in the Joint Venture to a wholly-owned subsidiary of Bay State or of The Provident, or to The Provident itself, provided such transferee assumes all of Bay State’s obligations hereunder.
In response, plaintiffs allege that §5.1 is void and unenforceable because the provision is an unlawful restraint on alienation of property. Plaintiffs assert that §5.1 absolutely prohibits Bay State from transferring its interest and serves no worthwhile purpose.
Restraints on alienation will be enforced unless “palpably unreasonable.” Colbert v. Hennessey, 351 *528 Mass. 131, 139 (1966); See also Franklin v. Spadafora, 388 Mass. 764, 766 (1983) (reasonable restraints on alienation of real property may be enforced). In Colbert, three shareholders executed an agreement which prohibited a shareholder from transferring stock without the consent of the other shareholders. Colbert, supra at 136. The purpose of this restraint was a “means of securing corporate control ... to those whose enterprise sponsored it and who contributed to the daily operation of the business.” Id. at 139. Holding that this purpose was not “palpably unreasonable,” the Supreme Judicial Court ruled that the restraint was valid. Id.[6]
In the context of a restraint of alienation of real property, in Franklin v. Spadafora, supra at 768, the Supreme Judicial Court examined, among other factors, whether a restriction limiting the number of condominium units which could be owned by any one person or entity served a worthwhile purpose. The court found that the restriction’s purpose to encourage “maximum occupancy by resident owners” was worthwhile and not against public policy. Id. at 769.
Drawing on these principles, I find and rule that the restriction on transferring interest in this case is an unreasonable restraint on alienation. I am unpersuaded by plaintiffs’ assertion that §5.1 is an absolute prohibition because §5.1 permits Bay State to transfer its interest in the joint venture “to a wholly-owned subsidiary of Bay State or of the Provident, or to the Provident itself.” The plain language of §5.1 enabled Bay State to transfer its interest, albeit to a specified class of entities, and thus was not an absolute restraint.
However, I agree with plaintiffs that the restraint serves no reasonable purpose. The Joint Venture Agreement already delegated the sole right and obligation to control and manage the joint venture to Parkway Development. Thus, there will be no change of control or management with a transfer of interest by Bay State. Unlike Colbert, a transfer of interest by Bay State will not enable an unacceptable outsider from asserting any management control over the joint venture. See Donahue v. Rodd Electrotype Co., 367 Mass. 578, 587 n.13 (1975). Thus, because no worthwhile purpose is served by restraining Bay State’s ability to transfer its interest, §5.1 is unlawful, and Tilton’s interest in the joint venture is valid.
Defendants also contend that Muddy River lacks standing to demand collection under the Second Parkway Realty Note and the two Parkway Limited Notes. Defendants allege that Muddy River is precluded from demanding payment on the Second Parkway Realty Note because it has not shown that it holds the Note. Additionally, with regard to the Parkway Limited Notes, defendants assert that Muddy River lacks standing to demand payment of these notes because Muddy River’s interest in these notes is only as a secured party.
After oral argument on this motion, I issued an order that Muddy River, as assignor, must demonstrate possession of the Second Parkway Realty Note before it could demand payment. See First National Bank of Cape Cod v. North Adams Hoosac Savings Bank, 7 Mass.App.Ct. 790, 797 (1979). After considering the numerous submissions filed by the parties, I find and rule that Muddy River has shown that it possesses the Second Parkway Realty Note along with the necessary endorsements from Shawmut to NEREA and subsequently from NEREA to Muddy River. First National Bank of Cape Cod, supra at 797; General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 585 (1992); New Bedford Institution for Savings v. Gildroy, 36 Mass.App.Ct. 647, 652 (1994) (payee in possession is always a holder). Accordingly, Muddy River has standing to assert its rights in the Second Parkway Realty Note.
As for the Parkway Limited Notes, I rule that Muddy River has a security interest in those notes. The Pledge-Collateral Assignment Agreement plainly refers to the Provident’s[7] interest in the Parkway Limited Notes as a security interest. Muddy River’s security interest in the Parkway Limited Note in amount of $2,656,527.68 is perfected because Muddy River has possession of this Note. G.L.c. 106, §9-3-401(1) (security interest in instruments can only be perfected by taking possession); In re Ivy Properties v. Shawmut Worcester County Bank, 109 B.R. 10, 12 (D.Mass. 1989) (assignee of note must take possession in order to perfect security note). Conversely, Muddy River’s security interest in the Parkway Limited Note for $79,060.94 is unperfected because Muddy River has not shown it possesses this note.
Whether Muddy River can foreclose on its security interests depends on whether a default has occurred with the underlying obligation, i.e. Second Parkway Realty Note. This issue goes to the substantive merits of this action. Thus, Muddy River has standing to assert its rights as a secured party.
B. Termination of the Joint Venture
Section 1.7 of the Joint Venture Agreement, as modified by §3 of the First Modification of the Joint Venture Agreement, expressly provides that ”[t]he term of this Joint Venture shall be 15 years from [September 18, 1980].” Thus, under the Joint Venture Agreement, the joint venture terminated on September 18, 1995.
Duration of a joint venture may be fixed by the terms of the agreement between the joint venturers. Where such a provision exists, the venture terminates upon the specified time, although it remains in existence for the purposes of winding up its affairs and settlement. 46 Am. Jur. 2d §61 (Joint Ventures). See G.L.c. 108A, s. 30[8] (upon dissolution, partnership is not terminated but continues until the winding up of partnership affairs is completed); In Re Luster, Friedman and Co., 8 B.R. 183, 185 (N.D. Ill. 1981) (before *529 a partnership or joint venture can be terminated, there must first be a dissolution and then a winding up of affairs). Here, the joint venture adopted these principles in §7.2 of the Joint Venture Agreement. Section 7.2 provides in part “[u]pon the termination of this Agreement and the Joint Venture, provision shall be made for payment of the liabilities of the Joint Venture
“Winding-up” is the process of settling partnership affairs after dissolution and is often called liquidation." Gull v. Van Epps, 517 N.W.2d 531, 536 (Wis. App. 1994). Winding up includes liquidating all assets, paying off debts and dividing profits among the partners. Id.; Weisbrod v. Ely, 767 P.2d 171, 174 (Wyo. 1989). Termination is the point when all partnership affairs have been wound up. Id.
With these principles in mind, I conclude, based on the express terms of the Joint Venture Agreement that the joint venture dissolved on September 18, 1995. After that date, the joint venture remained in existence for a reasonable time so that Parkway Development[9] might settle joint venture affairs by liquidating its assets, paying all liabilities and dividing profits among itself and Tilton according to their respective interests. See Gull, supra at 536; Weisbrod, supra at 174.
C. The Parkway Limited Notes
As the joint venture is the sole beneficiary of the Parkway Realty Trust, its assets include the two Parkway Limited Notes due from Parkway Limited to Parkway Realty Trust. Therefore, I rule that Parkway Development, as part of winding up the affairs of the joint venture, is obligated to direct Parkway Realty Trust to collect those notes.
Defendants argue that while the Parkway Limited Notes appear to have matured on April 24, 1994 they are not yet due. Defendants claim that the parties intended that payments on these notes would only come from profits, and to date there have been none. Unambiguous contracts are enforced according to their terms; any subjective expectations or contemplations by the parties are irrelevant. Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981) (words of an agreement plain and free from ambiguity must be construed in accordance with their usual and ordinary meaning); Blakeley v. Pilgrim Packaging Co., 4 Mass.App.Ct. 19, 24 (1976) (contemplation of the parties not material when contract is unambiguous).
Defendants’ argument is without merit and, indeed, is contradicted by their own actions. On June 1, 1994, at the request of the joint venture, Parkway Realty Trust notified Parkway Limited that the notes had become due and payable on April 24, 1994 and demanded that Parkway Limited satisfy the notes in full.
The two Parkway Limited Notes expressly provide that they mature on April 24, 1994. Each note was executed on April 24, 1984 and states “(m]aturity date: Ten (10) years from the date of this Note.” Although the notes both state that during the 10 year term, payments shall be made from a specific source, le. cash flow, the notes also unequivocally state in paragraph iv that “all accrued interest not previously paid, all principal outstanding hereunder if not sooner paid and all other sums due hereunder or under the Mortgage shall be due and payable on the Maturity date or upon earlier acceleration hereof.” The notes are to be construed to give reasonable effect to each of its provisions. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986). “Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties.” J.A. Sullivan Corp., supra at 795.
Under the plain and unambiguous language of both notes and giving reasonable effect to all provisions, I find and rule that the Parkway Limited Notes became due and payable on April 24. 1994. J.A. Sullivan Corp., supra at 795. Further, under the maturity provision, final payment of all sums is not limited to a specified source. Accordingly, Parkway Development on behalf of the joint venture, shall direct Parkway Realty Trust to demand payment in full of the Parkway Limited Notes from Parkway Limited.
C. The Second Parkway Realty Note
As part of the dissolution process, the joint venture must also pay all its liabilities. As the sole beneficiary of the Parkway Realty Trust, one of the debts is the Second Parkway Realty Note which the Parkway Realty Trust owes to Muddy River. Defendants, however, argue that the Second Parkway Realty Note is not yet due.
By its express terms, the Second Parkway Realty Note is a demand note. The Second Parkway Realty Note, however, is subject to a side letter executed by the Provident on April 26, 1984. This letter provides in part:
We [The Provident] hereby agree that we shall not make a demand for payment of the Note so long as payments on the Note (which shall be applied to accrued interest and then to repayment of principal), including payments of interest which shall be made from time to time from any cash flow available therefor, shall be made as provided in Section 4.2, entitled “Priority of Obligations," of said Parkway Development Joint Venture Agreement.
Thus, defendants are correct that by the terms of the Side Letter, Muddy River’s rights under the Note were “less robust than they would have been under a simple demand note.” Shawmut Bank NA v. Miller, 415 Mass. 482, 487 (1993). Defendants argue that the Second Parkway Realty Note is not due because there *530 has not been any available cash flow to pay out under the terms of the Side Letter.
To accept defendants’ argument, however, would imply that the Second Parkway Really Note might never become due and could remain outstanding in perpetuity. Further, defendants’ argument directly conflicts with the joint venture’s unambiguous obligations under §7.2 of the Joint Venture Agreement that upon termination the joint venture’s liabilities will be paid. Therefore, I rule that under the Joint Venture Agreement the joint venture is required to satisfy its liability under the Second Parkway Realty Note. See Gull, supra at 536; Weisbrod, supra at 174. Muddy River concedes that under §4.2 of the Joint Venture Agreement, the obligation to pay the Second Parkway Really Note is subordinate to the joint venture’s obligation to satisfy its other liabilities.
D. Muddy River’s security interest in Parkway Limited Notes
Muddy River properly demanded that Parkway Realty Trust satisfy the note on September 18, 1995. Upon dissolution of the joint venture, Muddy River made demand for payment of the Second Parkway Realty Note. The constraint upon Muddy River to demand payment was lifted upon dissolution of the joint venture.
To date, the note remains outstanding. Before the joint venture can pay the note to Muddy River, it must satisfy its other debts. If the joint venture fails to pay its obligation under the note after satisfying its other liabilities, Muddy River is entitled to foreclose upon its security interests in the Parkway Limited Notes by exercising any of its rights and remedies provided for in the Pledge-Collateral Assignment Agreement and under G.L.c. 106, §9-101 et seq.
ORDER[10]
For the foregoing reasons, the Court hereby ORDERS that Plaintiffs’ motion for summary judgment is ALLOWED as to Count I. Judgment shall enter declaring that:
1. The Parkway Development Joint Venture dissolved on September 18, 1995;
2. As part of dissolution, Parkway Development shall liquidate its assets, repay its liabilities and distribute any surplus to the joint venturers, Parkway Development and Tilton Development Corporation; and
3. Parkway Development shall direct Parkway Realty Trust to collect the two Parkway Limited promissory notes from Parkway Limited Partnership;
4. Muddy River Investment Corporation is entitled to demand payment of the Second Parkway Realty Note due from Parkway Realty Trust and, failing satisfaction of the same, to foreclose on its security-interests in the Parkway Limited Notes and mortgage securing the Second Parkway Realty Note.

There is a dispute whether development of the Park Apartments began before 1984. For purposes of summary judgment, the Court accepts as true the defendants’ assertion that the Park Apartment remained undeveloped by 1984.

Specifically, the Side Letter provides in part:
We, [the Provident], hereby agree that we shall not make demand for payment of the Note so long as payments on the Note (which shall be applied to accrued interest and then to repayment of principal), including payments of interest which shall be made from time to time from any cash flow available therefore, shall be made as provided in Section 4.2 entitled “Priority of Obligations" of said Parkway Development Joint Venture Agreement.

Likewise, in Fayard v. Fayard, 293 So 2d. 421, 424 (Miss. 1974), shareholders in a family-owned closed corporation challenged a transfer of stock between family members as violating the restriction against transferring stock without the consent of the other shareholders. The court invalidated the restraint against alienation as to transfers between family members because it found that it served no reasonable purpose. The court, however, upheld the restriction as it pertained to transfers outside the family because that served the legitimate purpose of protecting corporate objectives for the benefit of the family shareholders.

The Provident is Muddy River’s predecessor in interest.

General Laws, c. 108A, the Uniform Partnership Act, is generally applicable to joint ventures by way of analogy, although it does not govern directly. Doiran v. Gastonguay, 401 Mass. 705, 707 n.3 (1988).

Under the terms of the Joint Venture Agreement, Parkway Development is solely obligated to manage and control the joint venture.

As noted previously, plaintiffs stated at oral argument that the remaining claims, breach of contract and breach of fiduciary duty, are secondary to their declaratory judgment claims. Plaintiffs have seven days to notify the Court if they intend to pursue those claims.